Trans World Airlines, Inc., Appellant *v.* City of Philadelphia, Commission of Human Relations, Appellee.

342 

Argued April 4, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, CRAIG and MACPHAIL. Judges MENCER and DISALLE did not participate.

*Robert M. Landis,* with him *Toni M. Keller,* and *Dechert, Price & Rhoads,* for appellant.

*Ralph E. Johnston,* Assistant City Solicitor, with him *Theodore H. Lunine,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

Opinion by Judge Blatt, July 19, 1979:

Trans World Airlines, Inc. (appellant) appeals from an order of the Court of Common Pleas of Philadelphia County which affirmed an adjudication of the Commission on Human Relations of the City of Philadelphia (Commission). The Commission found the appellant guilty of sex discrimination under Section 9-1103 of the Philadelphia Code (Code), but the appellant contends (1) that its employment practice of treating maternity leave different from other medical leave did not constitute sex discrimination and that (2) its due process rights were violated when the Commission announced its policy on discriminatory maternity leave practices before it actually heard this case. The facts are not in dispute.

Eileen Dougherty (complainant) took a maternity leave on June 15, 1973 from her employment with the appellant. Following a normal pregnancy, she gave birth to her child on July 12, 1973, and returned to work on October 12, 1973. The appellant paid her $350 in medical benefits, but she received no other compensation for the period of her leave. She complained to the Commission, and as a result, charges of sex discrimination were then filed against the appellant and a hearing was scheduled. The evidence taken at a hearing before the Commission established: (1) that accrued sick leave pay and disability income benefits were not available to the appellant's employees on maternity leave, although they were available to employees on medical leave; (2) that accrued vacation, holiday, and birthday leave were not available to employees on maternity leave, although these were also available to employees on medical leave; and (3) that the appellant had prepared and circulated to its employees a printed notice setting forth these conditions of employment.[1] The Commission

---

[1] "Your Trans World Airlines, Inc. Group Insurance Plan."

found the appellant in violation of Section 9-1103 of the Code, which provides in relevant part:

> (A) It shall be an unlawful employment practice:
>
>> (1) For any employer to refuse to hire, or discriminate against any person because of race, color, sex, religion, national origin or ancestry with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment.
>>
>> . . . .
>>
>> (3) For any employer, employment agency or labor organization prior to employment or admission to membership to:
>>
>> . . . .
>>
>> (c) cause to be printed, published, or circulated any notice or advertisement relating to employment or membership indicating any preference, limitation[,] specification or discrimination based upon race, color, sex, religion, national origin or ancestry.

It ordered the appellant, *inter alia*, to cease and desist from discriminating against its female employees and to pay the complainant compensatory damages.

The appellant argues first that its practice was not unlawful under traditional equal protection concepts because the classification created was not as to "those with the capacity to become pregnant," but as to "those who are pregnant." It relies heavily on the reasoning of the United States Supreme Court in *Geduldig v. Aiello*, 417 U.S. 484 (1974), and *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), which applied the equal protection clause of the Fourteenth Amendment to find similar schemes permissible. As

we explained, however, in *Anderson v. Upper Bucks County Area Vocational Technical School,* 30 Pa. Commonwealth Ct. 103, 373 A.2d 126 (1977), construing the similar language of Section 5(a) of the Pennsylvania Human Relations Act,[2] 43 P.S. §955(a):

> Discriminatory practices not constitutionally prohibited may nevertheless be statutorily proscribed. The instant case is one of statutory interpretation, not one for constitutional analysis.

30 Pa. Commonwealth Ct. at 108, 373 A.2d at 129. We held, moreover, in that case

> that since pregnancy is unique to women, a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employes because of their sex.

30 Pa. Commonwealth Ct. at 110, 373 A.2d at 130. Section 9-1103 of the Code involved here clearly prohibits sex discrimination; and we have previously held, consistent with the Commission's ruling here, that a disability plan which differentiates between pregnancy and other medical disabilities is discriminatory. The conclusion is inescapable, therefore, that the appellant's practice constituted sex discrimination within the statutory definition here applicable.[3]

As to the appellant's second contention, that its due process rights have been violated, we are unable to perceive any such violation. It is true that the

---

[2] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §951 et seq.

[3] We attach no significance to the fact that the Commission has not promulgated a regulation dealing with maternity leave; nor do we believe that the existence of such a regulation was of controlling significance in the *Anderson* case. The Code section here is sufficient in itself, as was the statute in *Anderson,* to cover the discrimination in question.

Commission announced, after the instant complaint was filed and before the hearing in the case, a policy decision that "companies may not class pregnant employees in a special category which limits their benefits," and it appears that this announcement was indeed precipitated at least in part by the instant complaint. We do not agree, however, with the appellant's assertion that this constituted deciding the case before it was heard. The resolution of a matter before a tribunal, whether administrative or judicial, requires at least three distinct steps: (1) ascertainment of the facts; (2) ascertainment of the applicable law; and (3) application of the law to the facts. In the case at bar, the Commission's announcement only indicated what it considered to be the applicable law in a case of sex discrimination based on maternity leave practices. Although it referred to the *allegations* in this case,[4] there is absolutely no evidence that the Commission attempted to find facts, or to apply the law to those facts, before a hearing was held on this matter. Nor was there any other evidence that the Commission had in any other way prejudged the case.

Finally, we are obligated to note that pregnancy is not coextensive with disability. Accordingly, the

---

[4] The announcement referred to the instant case in the following passage:

> Farmer [Commission Chairman] said that the need for a Commission policy decision resulted from complaints filed by two women in separate actions. In one instance, a pregnant airline clerk *reported* that the company's benefit plan provided her with $350 in payments, which was considerably less than benefits provided for disabled employes. And a clerk employed by an electrical equipment manufacturer *complained* that she was forced to take a leave of absence when she was six-months' pregnant, although her doctor said that her health permitted her to work to full term.

> *Commission negotiators* will seek to win full benefits from the two companies for both employes, Farmer added. (Emphasis added.)

mandate of the law is not that pregnancy be treated as a disability, but that pregnancy-related disability be treated like any other disability. In the present case, there was no evidence or finding as to the complainant's actual period of disability, and the Commission's award was based simply on the length of her absence from work. We must therefore remand the case for a determination of the extent of actual disability and the calculation of compensation based thereon.

The order of the lower court is therefore affirmed in part and reversed in part.

### Order

And Now, this 19th day of July, 1979, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed except as to the award of compensatory damages, which is reversed and the matter remanded to the Commission on Human Relations for disposition thereof consistent with this Court's opinion.