529 A.2d 6

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Carmen DORANZO.**

Superior Court of Pennsylvania.

Argued March 24, 1987.

Filed July 23, 1987.

Leonard Deutchman, Assistant District Attorney, Phila-
delphia, for Com. appellant.

James A. Lardani, Philadelphia, for appellee.

Before CAVANAUGH, BROSKY and TAMILIA, JJ.

BROSKY, Judge:

This appeal, by the Commonwealth, is from an order
granting appellee's petition to return property. The Com-
monwealth argues that the petition was improperly granted
in light of the fact that appellee pled guilty to 47 counts of
receiving stolen property and the property subject to the
petition was commingled with items appellee admitted were
contraband.

Because we find that the trial court, in effect, imposed an
improper burden upon the Commonwealth, we reverse the
order in question.

Appellee had been suspected by the Philadelphia Police
Department of running an illegal "fencing" operation.

On July 18, 1979 members of that Department executed
search and seizure warrants at five different properties
owned by appellee. As a result of the execution of those
warrants hundreds of items of personal property were
seized and taken into police custody. Appellee was arrested
on that same date and charged with sixty-seven (67) counts
of theft by receiving stolen property. Following a prelimi-
nary hearing appellee was held for court on forty-seven (47)
of those counts. On November 24, 1980 appellee pled guilty
to forty-seven (47) counts of theft by receiving stolen prop-
erty. At the time of the guilty plea it was stipulated by
appellee that all of the property involved in the 47 counts
was stolen. Furthermore, it was clear at that time that
those items had been identified as belonging to designated
owners/complainants. On April 23, 1981 appellee filed a
petition for return of property seeking return of those items

of personal property held by the Philadelphia Police since July 18, 1979 which were neither identified as belonging to nor claimed by any persons other than appellee.

The trial court granted appellee's petition on March 23, 1982 and the Commonwealth appealed to this Court. We reversed and remanded for further development of the record. 309 Pa.Super. 473, 455 A.2d 708. On April 22, 1983 a second hearing was held on the matter and resulted in the granting of the petition a second time. This appeal followed.

At the second hearing the Commonwealth presented the testimony of three detectives who had been personally involved in the execution of the search warrants and the seizure of the property in question. The collective testimony of the detectives revealed that although personal property was found in dwelling houses there were no signs that anyone had been living in those houses. Furthermore, the property was often grouped together and, to some degree, in the words of one of the detectives, resembled "a small K–Mart." The property subject to the petition was freely commingled with property admitted by appellee to have been stolen and a known burglar was seen delivering stolen property to one of the residences just prior to the search.

The Commonwealth argues that the testimony regarding the nature and volume of the goods and the way they were arranged when taken in conjunction with appellee's guilty plea to 47 counts of receiving stolen property circumstantially proves that the contested property was contraband and therefore subject to forfeiture. The Commonwealth admits it does not have direct evidence connecting the personalty in question to illegal activity but insists that illegality can be proven circumstantially. The trial court apparently disagreed stating "that property cannot be forfeited as derivative contraband since it has not been directly traced to illegal activity." We believe the standard imposed upon the Commonwealth was too strict.

Certainly, it would have been desirable to see direct evidence linking the property in question to illegal

activity. This would resolve almost all doubt as to the legality or illegality of the possession of the property. However, the fact that the Commonwealth did not have such direct evidence does not mean that appellee was in lawful possession of the property. The trial court, sitting as fact finder, was required to make a finding as to the appellee's lawful possession of the property. The Commonwealth has the burden of proving by a preponderance of the evidence that the property in question was contraband. *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976). Preponderance of the evidence is tantamount to "more probable than not." We believe the Commonwealth sustained this burden.

The Commonwealth introduced irrefutable evidence that the appellee was engaged in a business of receiving and reselling stolen property. The whole of the evidence created a very strong inference that the property in question was illegally possessed. The fact that no one had claimed the property does not necessarily controvert the impression that the property was illegally possessed. There are many reasons which could explain why stolen property could go unidentified. The owner may never have realized that it was stolen, believing it to have been misplaced or lost. Or, despite it being stolen, the owner may not have bothered to report it believing it to be an exercise in futility. Or the property may have been stolen in another county or state and made its way into appellee's possession. Furthermore, appellee didn't even offer his testimony to establish that he was in lawful possession of the property or to otherwise explain how he came into its possession or its source.

Proof by the preponderance is often alluded to as a weighing of the evidence and a determination based upon which way the scales are tipped. The Commonwealth's evidence, in our opinion, tips the scale heavily in its direction. Conversely, appellee chose not to enter any evidence on his behalf while hiding behind what he believed to be a difficult burden to overcome. While the appellee was not obligated to present evidence to support his position, his

refusal to do so left the mythical scales tipped in the Commonwealth's favor and compels a determination in its favor. In our opinion, the burden placed on the Commonwealth has been met. We believe the evidence viewed in its entirety makes it far more probable than not that the property in question was unlawfully possessed. By requiring direct evidence that the property was stolen, the trial court was requiring that the Commonwealth prove unlawful possession, in effect, beyond reasonable doubt. Such a burden could only work to profit one in unlawful possession who could then retain possession of such property by simply hiding behind an onerous burden. We do not think our law requires such a result. Nor have we found the property in question "guilty by association."

In *Petition of Maglisco*, 341 Pa.Super. 525, 491 A.2d 1381 (1985), per Brosky, J., we stated that personal property could not be subjected to forfeiture simply because it is of the same type as property which is definitely contraband. In that case a shooting took place with a .38 caliber revolver. Police later confiscated the revolver and also several rifles. We found that the rifles could not be deemed contraband simply because the revolver was derivative contraband. Forfeiture of the rifles would require independent evidence of unlawful possession. However, in the present case, as previously discussed, all the evidence tends to indicate that the property in question was unlawfully possessed.

The Commonwealth firmly established that a "fencing" business was being conducted. Appellee admitted goods found warehoused in his several "residences" were stolen and stolen goods were observed being delivered to one of the "warehouses". In *Maglisco*, there was no logical connection between the pistol and the rifles; no reason to assume that the rifles were also contraband, and no other independent evidence that they were unlawfully possessed. Furthermore, unlawful possession in *Maglisco* would require a finding that the property was used in an unlawful manner. There was no reason to assume that the rifles

were also used in an unlawful manner. However, here, the finding of unlawful possession would require a finding that the party claiming lawful possession did not have legal title and the whole of the evidence indicated that he did not. Had the Commonwealth seized a television set in appellee's personal residence because a second set found in the residence was stolen and the Commonwealth lacked other evidence indicating unlawful possession, we believe *Maglisco* would have controlled. However, that is not the case and we find that the Commonwealth has met its burden. Consequently, we reverse the order in question.

Order reversed, jurisdiction relinquished.

CAVANAUGH, J., files a dissenting statement.

CAVANAUGH, Judge, dissenting:

I dissent. Respectfully, I believe that the majority has misread the trial court opinion as requiring that the Commonwealth produce direct evidence that the items in question were in fact contraband. Rather, the lower court made it clear that the Commonwealth failed to meet its evidentiary burden because it did not, through direct or circumstantial evidence, provide a direct *link* between the property at issue and a criminal activity. This requirement of some form of direct *link* or nexus between the goods subject to forfeiture and a criminal act was discussed in *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976), an opinion that was cited below.

In support of its conclusion that the lower court imposed a burden on the Commonwealth of producing direct evidence, the majority quotes a portion of the trial court opinion which states: "that property cannot be forfeited as derivative contraband since it has not been directly traced to illegal activity." I submit that the above quote is a close paraphrase of the language in *Landy* and represents an accurate statement of the law.

I am also concerned with the majority's emphasis on the appellee's failure to testify or present evidence that the

property in dispute was in fact owned by him. The burden at all times was on the Commonwealth to establish by a preponderance of the evidence that these items were derivative contraband. It was appellee's absolute right to put the Commonwealth to its proofs, and we cannot, as the majority seems to suggest, draw any inferences whatever from appellee's decision to allow this case to stand or fall on the Commonwealth's evidence alone.

Finally, I would agree with the lower court's determination that the Commonwealth failed to establish by a preponderance of the evidence that the property at issue was contraband subject to forfeiture. The primary thrust of the Commonwealth's case was that this property was found along with other items which were admittedly stolen goods, and that it therefore constitutes derivative contraband. In the nearly eight years that the property has remained in police custody, the Commonwealth has been unable to establish that these items are owned by anyone other than appellee. I would find that the Commonwealth's evidence amounts to little more than an assertion of "contraband by association", and is insufficient to overcome its burden of proof in this matter.