634 A.2d 697

COMMONWEALTH of Pennsylvania

v.

$32,950.00 U.S. CURRENCY SEIZED FROM SAFE DEPOSIT BOX NO. 437 MERIDIAN BANK, 101 E. OLNEY AVENUE, PHILADELPHIA, PA.,

**Appeal of Claire FRIEL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided Nov. 18, 1993.

William T. Lawson, III, for appellant.

Michael Erlich, Asst. Dist. Atty., for appellee.

Before COLINS and McGINLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Claire Friel (Claire) appeals from an opinion and order of the Court of Common Pleas of Philadelphia County (trial court) which denied her petition for return of property in the form of $32,950.00 in currency and granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture of the money pursuant to 42 Pa.C.S. §§ 6801–6802,

commonly known as the Controlled Substances Forfeiture Act (Act). We affirm.

The facts giving rise to this forfeiture proceeding are as follows. On November 29, 1989, narcotics officers assigned to the Drug Enforcement Administration Task Force in Philadelphia executed a search warrant at a small row house located at 445 Saint Paul Street. The warrant named Kevin Friel (Kevin), Claire's son, as the subject of the warrant. R.R. 16a. As a result of the search of the premises, the police confiscated several thousand dollars worth of the drug methamphetamine [1] and numerous items classified as drug paraphernalia.[2] Kevin, who was present when the warrant was executed, was arrested and charged with various drug offenses.[3] At the time of his arrest, Kevin was personally searched by the police who recovered from his wallet a small manila envelope containing a key for safe deposit box No. 437 at the Meridian Bank located at 101 East Olney Avenue. The next day the police obtained an additional search warrant and opened the safe deposit box. Inside the box, among other things,[4] were several envelopes containing currency totaling $32,950.00. The contents of the box was seized by the police.[5]

The Commonwealth filed a petition for forfeiture and Claire filed a petition for return of property, pursuant to Pennsylvania Rules of Criminal Procedure 324, Pa.R.Crim.P. 324, seek-

1. Methamphetamine is a sympathomimetic agent that exerts greater stimulating effects upon the central nervous system than does amphetamine. Stedman's Medical Dictionary 956 (25th ed. 1990). The street value of the amount seized was between $3,500–$5,000. R.R. 35a–36a, 38a.

2. The items included a triple-beam scale, frying pans, grain alcohol, and bags of phenylpropanolamine ("phenyl"), a cutting agent. R.R. 12a–13a, 34a, 38a. The items seized were consistent with those used in a drug processing operation.

3. Kevin was subsequently tried by a jury in Federal Court and convicted of distributing drugs. R.R. 36a, 80a–81a.

4. The safe deposit box also contained a couple of government bonds, title to a vehicle, jewelry and loose jewels.

5. Pursuant to Section 6801(b) of the Act, property subject to forfeiture may be seized by the law enforcement authority upon process issued by any court of common pleas having jurisdiction over the property. 42 Pa.C.S. § 6801(b).

ing return of the currency.[6] A hearing on the two petitions was held before the trial court on May 31, 1991. Claire asserted that the money seized by the police belonged to her and was not the proceeds of her son's drug business. The trial court concluded that the seized money was a result of Kevin's involvement in the drug business. The trial court denied Claire's petition and ordered the money forfeited to the Commonwealth. Claire filed this appeal.[7]

In all forfeiture proceedings regarding the possible forfeiture of money, the Commonwealth bears the initial burden of establishing either 1) that the money was furnished or intended to be furnished in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act [8] (Controlled Substance Act) or the proceeds traceable to such an exchange or 2) that the money was used or intended to be used to facilitate any violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A), (B). In so showing, the Commonwealth must establish a nexus between the unlawful activity and the property subject to forfeiture.[9] *Commonwealth v. Nineteen Hundred and Twenty Dollars United States Currency*, 149 Pa.Commonwealth Ct. 132, 612 A.2d 614 (1992). If the Commonwealth prima facie establishes that the money was subject to forfeiture under

6. Claire's petition only seeks return of the currency and does not seek return of the other items in the safe deposit box. R.R. 74a–77a. Kevin did not file a petition for return of property.

7. Claire's appeal was originally filed with the Superior Court, which transferred the case to this Court on November 13, 1992.

8. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780–101—780–144.

9. Forfeiture proceedings in Pennsylvania, while quasi-criminal in nature, are civil in form. 42 Pa.C.S. § 6802(a); *Commonwealth v. One 1983 Toyota Corolla*, 134 Pa.Commonwealth 325, 578 A.2d 90 (1990). Accordingly, the standard of proof is by a preponderance of the evidence. *Commonwealth v. One 1988 Suzuki Samurai*, 139 Pa.Commonwealth Ct. 68, 589 A.2d 770 (1991). Preponderance of the evidence is tantamount to a "more probable than not" standard. *Commonwealth v. Doranzo*, 365 Pa.Superior Ct. 129, 529 A.2d 6 (1987). Proof by the preponderance of the evidence is often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped. *Id.*

Section 6801(a) of the Act, the burden shall be upon the claimant to show 1) that the claimant is the owner of the money, 2) that the claimant lawfully acquired the money, and 3) that the money was not unlawfully used or possessed by him. 42 Pa.C.S. § 6802(j); *Commonwealth v. One 1974 Chevrolet Box-Type Truck*, 126 Pa.Commonwealth Ct. 173, 559 A.2d 76 (1989) (where the Commonwealth sustains its burden, the burden of production shifts to the property owner to disprove the Commonwealth's evidence or establish a statutory defense to avoid forfeiture). The only issue raised by Claire in her appeal to this Court is whether the Commonwealth provided sufficient evidence that the money seized was derived from illegal activity.

█ Claire asserts that in order for the money to be subject to forfeiture, the Commonwealth must trace the source of that money directly to the illegal activity. Claire relies on the decision in *Commonwealth v. Landy*, 240 Pa.Superior Ct. 458, 362 A.2d 999 (1976), in which the Superior Court stated that "money proceeds directly derived from and directly traceable to the sale of a controlled substance ... are 'derivative contraband' subject to forfeiture." *Id.* at 465, 362 A.2d at 1002. Claire argues that this language creates a broad principle that unless the Commonwealth can trace the source of the money directly to the illegal activity, the money cannot be forfeited. However, in *Commonwealth v. Doranzo*, 365 Pa.Superior Ct. 129, 529 A.2d 6 (1987), the Superior Court specifically rejected a similar argument that the Commonwealth must produce evidence directly linking the property to the illegal activity in order to carry its burden. 365 Pa.Superior Ct. at 132-134, 529 A.2d at 8-9. The Superior Court held that such a standard was too strict and would impose an onerous burden on the Commonwealth. *Id.* Accordingly, the Commonwealth is not required to produce evidence directly linking the property in question to the illegal activity.

█ The relevant facts as established at the hearing before the trial court are as follows. Kevin participated in a drug processing operation conducted at 445 Saint Paul Street. At

the time of his arrest, he was found to be carrying a key to safe deposit box No. 437. Claire had originally acquired the box on June 15, 1989 and Kevin was added as a joint owner on July 16, 1989. After the box was acquired by Claire, it was only accessed on one occasion, that being by Kevin on August 11, 1989. On November 30, 1989, the police secured the box pending arrival of a search warrant. On that same day, Claire attempted unsuccessfully to gain access to the box. Upon arrival of the search warrant, the box was opened and its contents inventoried at the bank. Inside the box were several envelopes containing currency totaling $32,950.00. The name of Kevin's attorney, Robert Pedimto, Esquire, was written on four of the envelopes.

Officers Gary Martinez and Wilbert Kane, both of whom were present during the original search of the house, testified that the money which was seized from the box had an odor which was consistent with the odor detected at the house, which they identified as methamphetamine.[10] Officer Kane also testified that, based on the items seized at the house, he estimated that the drug operation was capable of generating proceeds in excess of $145,000.00.

Claire testified that the money found within the safe deposit box belongs to her and her husband and not to Kevin. Claire also testified that she chose the Meridian Bank for its location because of her husband's poor health. She further testified that she and her husband agreed to put Kevin's name on the box for their convenience so that he could access it for them when they were out of town. Claire claimed that Kevin accessed the box at her direction on August 11, 1989 in order to retrieve a deed for property owned by her. Claire also testified that the money in the box represented a portion of her life savings in addition to monies she received from two different inheritances. Claire explained the presence of Kevin's attorney's name on several of the envelopes which contained the money by claiming that the envelopes had been

10. Both parties stipulated that Officer Kane was qualified to identify methamphetamine by sense of smell.

recycled from a previous use.[11]  Claire also admitted to owning a safe deposit box at another financial institution which was closer to her residence than was the Meridian Bank. Claire denied any relationship or contact to the property located at 445 Saint Paul Street and any knowledge of how the money had acquired a methamphetamine odor.

The trial court noted that, although Claire claimed the safe deposit box was opened at Meridian Bank because her husband is ill, her husband was not listed on the bank records as an owner of the box nor was he authorized to access it. The trial court also noted that Claire merely talked in general terms about substantial savings and inheritance and was unable to specifically document the sources of the monies in the safe deposit box.  The trial court further noted that Claire could not account for the methamphetamine odor on the money.  As a result of the aforementioned deficiencies, the trial court found Claire's testimony to be unreliable and untrustworthy.[12]

The trial court further found that Kevin was heavily involved in the manufacture and distribution of drugs and that the money seized was a result of his involvement in the drug business.  Accordingly, the trial court concluded that the Commonwealth established a nexus between Kevin's unlawful drug activity and the money found in the safe deposit box.[13]

The evidence of record established that Kevin was involved with drug activity capable of generating substantial profits. Moreover, Kevin was carrying the safe deposit key in his

11.  Claire claimed to have, in the past, paid for speeding tickets of Kevin and stated that she must have written his attorney's name on the envelopes at that time.

12.  The trial judge, when sitting as the finder of fact, is solely responsible for evaluating the credibility of the witnesses and weighing their testimony.  *Commonwealth v. One 1985 Cadillac Seville*, 371 Pa.Superior Ct. 390, 538 A.2d 71 (1988).

13.  "It is axiomatic that 'findings of fact by a trial judge are accorded the same weight as a jury verdict and our scope of review is limited to examining whether the findings are supported by competent evidence.'"  (Citation omitted.)  *Commonwealth v. $15,836.85–Cash*, 354 Pa.Superior Ct. 279, 283, 511 A.2d 871, 874 (1986).

wallet at the time of his drug arrest. Four of the envelopes in which the money was kept had the name of Kevin's attorney written on them linked them to Kevin and not to Claire. Additionally, the money seized from the box had a strong methamphetamine odor consistent with the smell detected at the time of the original drug raid. *See In re Commonwealth, $803 Cash, U.S. Currency*, 403 Pa.Superior Ct. 526, 589 A.2d 735 (1991) (drug residue found on seized money was sufficient to support an inference that the funds had been part of an illegal drug transaction and were therefore subject to forfeiture). Furthermore, Kevin was the only person who had accessed the safe deposit box between the time it was originally opened and subsequently seized.

Accordingly, the trial court did not err by concluding that the Commonwealth had met its burden.

## ORDER

AND NOW, this 18th day of November, 1993, the order of the Court of Common Pleas of Philadelphia County, dated May 31, 1991, is affirmed.