IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 921 C.D. 2023 |
| | : | Submitted: July 5, 2024 |
| $4,020.00 Belonging to Harry Dunlap | : | |
| | : | |
| Appeal of: Harry Dunlap | : | |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED:  August 16, 2024

Harry Dunlap (Dunlap) appeals, *pro se*, from the March 7, 2023 order of the Court of Common Pleas of Clearfield County (the trial court), which granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture (Forfeiture Petition) of $4,020.00 cash in United States currency the police seized from Dunlap when they arrested him and charged him with violations of The Controlled Substance, Drug, Device, and Cosmetic Act (Drug Act),[1] under the provisions of the Controlled Substance and Forfeiture Act (Forfeiture Act).[2]  After review, we affirm.

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 to 780-144.

[2] 42 Pa.C.S. §§ 5801-5808.

## BACKGROUND

On November 9, 2021, Officer Zane Rhed (Officer Rhed) of the DuBois City Police Department conducted a traffic stop of Dunlap's vehicle. Original Record (O.R.), Item No. 19. During the interaction, Officer Rhed searched Dunlap and his vehicle, and Officer Rhed seized methamphetamine, a glass smoking pipe, and $4,020.00 cash. *Id.* Officer Rhed charged Dunlap with possessing a controlled substance and with possessing drug paraphernalia, both violations of the Drug Act. *Id.* Dunlap pled guilty to possessing the drug paraphernalia. *Id.* On August 23, 2022, the Commonwealth filed a Forfeiture Petition requesting forfeiture of the $4,020.00 cash Officer Rhed seized from Dunlap. *Id.*, Item No. 2. In response, Dunlap filed an answer and a petition for return of property in which Dunlap asserted the cash was not related to any drug activity, but rather was payment he received from a friend to install a furnace. *Id.*, Item Nos. 4, 5.

On January 17, 2023, the trial court held a hearing on the Commonwealth's Forfeiture Petition. At the hearing, the Commonwealth presented the testimony of Officer Rhed, who indicated he is a K-9 handler and primarily conducts drug investigations. *Id.*, Item No. 19. Officer Rhed observed Dunlap commit a traffic offense after Dunlap left a "known drug house." *Id.* Officer Rhed was familiar with the house because the police had executed search warrants there before and seized controlled substances. *Id.* Additionally, the police had conducted numerous stops of pedestrians and vehicles coming from the house, and the police seized controlled substances as a result. *Id.*

After initiating the traffic stop of Dunlap, Officer Rhed approached him and observed a white powdery substance on Dunlap's nose. *Id.* Officer Rhed learned Dunlap had an outstanding warrant, and Officer Rhed placed him under arrest. *Id.*

2

Subsequently, Officer Rhed conducted a search of Dunlap and his vehicle. *Id.* Officer Rhed found methamphetamine underneath the driver's seat, a glass smoking pipe, and $4,020.00 cash in Dunlap's pocket. *Id.* The money was packaged into multiple groups in packets of a thousand dollars, held together with a rubber band, and placed inside a plastic bag. *Id.* Officer Rhed explained this type of packaging was consistent with his observations of money packaging in other drug trafficking cases. *Id.* According to Officer Rhed, Dunlap provided two different explanations for having the money, indicating first he was purchasing a furnace for himself, and then stating the money was for construction costs. *Id.*

At the hearing, Dunlap testified on his own behalf. Dunlap claimed he received the money from a friend to purchase a furnace. *Id.* Additionally, Dunlap testified he had six to eight marijuana cigarettes in the cupholder, which the police did not charge him with, and explained the marijuana and methamphetamine were both for his personal use. *Id.* Regarding the house Dunlap had been visiting, he explained he knew the resident from jail, he had not seen him in a long time, and he stopped to visit. *Id.* Dunlap claimed he did not engage in any drug activity while at the house. *Id.*

By opinion and order dated March 7, 2023 (Opinion), the trial court granted the Commonwealth's Forfeiture Petition. The trial court accepted Officer Rhed's testimony as credible, and discredited Dunlap's explanation for possessing the money. Trial Ct. Op., at 3-4. The trial court noted the Forfeiture Act's statutory rebuttable presumption and explained:

> Within the Forfeiture Act, the Legislature created a presumption that money … found in close proximity to controlled substances possessed in violation of [the Drug Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Drug Act.] 42 Pa.C.S. § 5802(6)(iii). In this case, the money

3

subject to forfeiture was found in Dunlap's pocket, and the cash was divided into three bundles of $1,000.00, and one bundle of $1,020.00. The methamphetamine was found in a black box located under the driver's seat of Dunlap's vehicle. Additionally, Dunlap testified that there were marijuana cigarettes in the cupholder next to the driver's seat.

. . . .

In consideration of the presumption created by the Forfeiture Act due to the cash's proximity to the drugs, this Court finds that the Commonwealth has established its burden by a preponderance of the evidence. Furthermore, Dunlap has not presented any credible evidence that would rebut the presumption and show lawful ownership and use of the money. Therefore, the $4,020.00 belonging to Dunlap, and seized by the [police] during the traffic stop . . . is subject to forfeiture in accordance with 42 Pa.C.S.[] § 5802(6).

*Id.* at 2, 4.

Dunlap now appeals. On appeal, Dunlap raises two issues.[3] In his first issue, Dunlap argues the Commonwealth failed to prove, by a preponderance of the evidence, a sufficient nexus between the seized money and illegal activity. Dunlap's Br. at 9. Specifically, Dunlap contends that because the Commonwealth dismissed the possession of methamphetamine charge, "there [are] no drugs to be considered in this [a]ppellate review." *Id.* at 14-15. Additionally, he asserts the Commonwealth did not introduce the pipe as evidence and did not introduce any evidence of drug

---

[3] In the Statement of Questions Involved section of his brief, Dunlap lists the following:

1. Whether [Dunlap's] 14th Amendment due process right under the Constitution of the United States of America[] was violated.

2. Whether the Commonwealth established by a "preponderance of the evidence" that [Dunlap's] money was illegally obtained. Whether the money was to be used for illegal purposes, and supported in the record.

Dunlap's Br. at 9.

residue, fingerprints, or DNA found on the pipe. *Id.* Thus, he maintains this Court should not consider his possession of the pipe, and without this evidence, the Commonwealth failed to prove a nexus between the money and illegal drug activity. *Id.* at 14-15. In his second issue, which is substantively similar to his first, Dunlap argues the trial court violated his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.[4] *Id.* Specifically, Dunlap asserts his "14th [Amendment] due process right was violated based on mere suspicion, spec[ulation], and conjecture" because "there was no real testimony of any drug transactions or any intent to sell anything." *Id.* at 16. Dunlap contends the trial court "erred [by] not requiring any evidence of fact necessary to the decision therein." *Id.* at 17.[5]

## DISCUSSION

In an appeal from a forfeiture proceeding, this Court reviews whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 (Pa. Cmwlth. 2014). We are deferential to the trial court's findings so long as they are supported by substantial evidence. *Id.*

The Forfeiture Act permits the forfeiture of property exchanged for drugs or used or intended to be used to facilitate any violation of the Drug Act. *See* 42 Pa.C.S. § 5802. In relevant part, the Forfeiture Act provides the following are subject to forfeiture:

> (A) Money . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in

---

[4] U.S. Const. amend. XIV.

[5] The Commonwealth elected not to file an appellee's brief.

5

violation of [the Drug Act], and all proceeds traceable to such an exchange.

(B) Money . . . or other things of value used or intended to be used to facilitate any violation of [the Drug Act].

42 Pa.C.S. § 5802(6)(i)(A)-(B).

In a forfeiture proceeding involving seized money, the Commonwealth bears the burden of proving, by a preponderance of the evidence, a nexus between the money and a violation of the Drug Act. *Commonwealth v. Burke*, 49 A.3d 542, 546 (Pa. Cmwlth. 2012). A preponderance of the evidence equates to a "more probable than not" standard. *Commonwealth v. $32,950.00 U.S. Currency*, 634 A.2d 697, 698 n.9 (Pa. Cmwlth. 1993). While the Commonwealth may satisfy its burden by circumstantial evidence, it must demonstrate more than a "possibility or a mere suspicion of a nexus." *Commonwealth v. $301,360.00*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018).

In a forfeiture proceeding involving money, the Commonwealth must initially prove:

(1) . . . the money was furnished or intended to be furnished in exchange for a controlled substance, (2) . . . the money represents proceeds traceable to such an exchange, or (3) . . . the money was used or intended to be used to facilitate a violation of the [Drug] Act.

*Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1039 (Pa. 2017). When money is found in close proximity to controlled substances possessed in violation of the Drug Act, it is presumed to be derived from selling controlled substances. 42 Pa.C.S. § 5802(6)(ii). Our Supreme Court has held this rebuttable presumption may be sufficient to satisfy the Commonwealth's initial burden of demonstrating a nexus between seized money and prohibited drug activity under the

6

Forfeiture Act. *$34,440.00 U.S. Currency*, 174 A.3d at 1041. Once the Commonwealth satisfies its burden of proving a substantial nexus between the seized money and illegal drug activity, the burden then shifts to the party opposing forfeiture to prove: (1) he owns the money, (2) he acquired it lawfully, and (3) he did not use or possess the money for an illegal purpose. *Burke*, 49 A.3d at 546 (citation omitted). This gives the claimant an opportunity to persuade a court that the money has an alternative origin. *$34,440.00 U.S. Currency*, 174 A.3d at 1043-44.

Here, Dunlap's arguments on appeal consist of general assertions that the Commonwealth failed to establish a nexus between the seized money and illegal activity. To accept Dunlap's arguments, we would have to disregard the trial court's credibility determinations and reweigh the evidence in his favor, which we decline to do. *See Lodge v. Robinson Twp. Zoning Hearing Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022) (stating the trial court as factfinder is "the ultimate judge of credibility and resolves all conflicts in the evidence"); *see also City of Phila., Bd. of Pensions & Ret. v. Clayton*, 987 A.2d 1255, 1262 (Pa. Cmwlth. 2009) (indicating the factfinder "is free . . . to believe all, part, or none of the evidence"). The trial court's findings are supported by substantial evidence in the record; thus, we defer to its factual determinations. *See Pinnacle Amusement, LLC v. Bureau of Liquor Control Enf't*, 298 A.3d 447, 450 (Pa. Cmwlth. 2023) (citation omitted). The trial court found Officer Rhed's testimony credible, and Officer Rhed established the money, which was in Dunlap's pocket, was near the methamphetamine, which was under Dunlap's driver's seat, as well as the marijuana, which was in Dunlap's cupholder.

7

Furthermore, the trial court accepted Officer Rhed's testimony that he observed Dunlap leave a known drug dealer's house immediately before the traffic stop and observed a white powdery substance on Dunlap's nose. The trial court found Dunlap provided inconsistent explanations to Officer Rhed as to why he possessed such a large amount of cash. Ultimately, the trial court determined the "combination of the proximity of the cash and the drugs, as well as Dunlap's presence at a known drug dealer's house, [to be] more than enough to establish the preponderance burden." Trial Ct. Op., at 3. Consequently, the burden then shifted to Dunlap. While Dunlap testified and offered the trial court an alternative explanation for why he had the money, the trial court rejected Dunlap's testimony, finding his explanation was not credible.

Dunlap asserts that because the Commonwealth elected to dismiss the charge of possession of methamphetamine, his possession of the methamphetamine, which was near the money, cannot be considered. Similarly, he argues that because the Commonwealth did not introduce the pipe, his possession of drug paraphernalia cannot be considered. The Pennsylvania Supreme Court has held that to establish a basis for currency forfeiture, the Commonwealth "need not produce evidence directly linking the seized property to illegal activity, nor is a criminal prosecution or conviction required to establish the requisite nexus." *$34,440.00 U.S. Currency*, 174 A.3d at 1039 (citation omitted). The Commonwealth demonstrated Dunlap's possession of methamphetamine and the smoking pipe through Officer Rhed's testimony, and evidence that he was convicted of those crimes was not necessary for the Commonwealth to satisfy its burden.[6]

---

[6] Notably, Dunlap pled guilty to the possession of drug paraphernalia charge. O.R., Item No. 19.

Based on its findings, the trial court properly determined the Commonwealth proved, by a preponderance of the evidence, a substantial nexus between the seized money and a violation of the Drug Act. Dunlap failed to persuade the trial court he did not possess the money for an illegal purpose, and thus he did not rebut the presumption. Therefore, the trial court properly granted the Commonwealth's Forfeiture Petition.

## CONCLUSION

The trial court's findings are supported by substantial evidence, and we discern no error of law or abuse of discretion in its conclusions. Accordingly, we affirm the trial court's order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
                                          :
            v.                  :  No.  921 C.D. 2023
                                            :
$4,020.00 Belonging to Harry Dunlap   :
                                          :
Appeal of: Harry Dunlap          :

# **O R D E R**

**AND NOW**, this 16th day of August 2024, the March 7, 2023 order of the Court of Common Pleas of Clearfield County is **AFFIRMED**.

_____
STACY WALLACE, Judge